WALSH, The W. J. See Case No. 17,922.

---

## Case No. 17,118.

### In re WALSHE.

[2 Woods, 225.][1]

Circuit Court, D. Louisiana. April Term, 1876.

BANKRUPTCY — VALIDITY OF COMPOSITION — PURCHASE OF CLAIMS BY RELATIVE— PRACTICE—REFERENCES.

1. A purchase by the brother of a bankrupt and the transfer to him of a large part of the claims against the bankrupt, and the satisfaction at a large discount of other claims by the bankrupt himself for the purpose of assuring the acceptance of a composition proposed by the bankrupt, constitute no reason why the composition should not be confirmed by the court, when it was made to appear that excluding the brother and the claims held by him more than two-thirds in number, and a majority in value of the creditors had assented

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

thereto, and that the evidence of these transactions of the bankrupt and his brother was open and accessible to the assenting creditors.

2. A court of bankruptcy has all the powers of a court of chancery, and proceeds summarily untrammeled by the ordinary rules of procedure. A court of chancery may refer a matter for inquiry as to the facts at any stage of the cause, even on final hearing; therefore:

3. After a motion to confirm a compromise had been brought on for final hearing before the bankrupt court, the judge had the power to refer the matter back to the register to report all the facts of the case touching the proposed compromise.

4. The presence and vote of a creditor who is not lawfully to be accounted such, in favor of a composition, should not nullify the proceedings unless the absence of his vote would change the result.

This was a petition of review brought to reverse an order of the district court sitting in bankruptcy.

John H. Kennard, W. W. Howe, and S. S. Prentiss, for petitioners.

Thomas J. Semmes and Robert Mott, contra.

BRADLEY, Circuit Justice. On the 10th day of January, 1876, Blaney T. Walshe, of the city of New Orleans, filed his voluntary petition in bankruptcy; and on the 13th of January, he filed a petition for a compromise with his creditors under the 17th section of the act of 1874 [18 Stat. 178], offering ten cents on the dollar.

A meeting of the creditors having been called, a resolution accepting the offer was passed, as required by said act, being concurred in by all the creditors present and voting. At this meeting, the bankrupt was examined in presence of the creditors by the attorneys of Arnold, Constable & Co. and Brokaw Bros., who afterwards opposed the composition. He identified a circular sent by him to his creditors in December, 1874, offering 25 cents on the dollar, and various other propositions, none of which were accepted in the form proposed. He stated that all of his creditors except Arnold, Constable & Co., Brokaw Bros. and Libby, sold their claims for 25 cents on the dollar to Frederick H. Smith, of Newark, New Jersey, agent for his brother George Walshe, within two or three months of the issuance of the circular. His brother furnished Smith with $5,000 in cash to make these purchases; the balance, $2,500, was raised by the petitioner himself in New Orleans. He then explained in detail how his property had gone on diminishing in value by which he was now unable to offer more than ten cents on the dollar.

Arnold, Constable & Co. and Brokaw Bros. thereupon filed a formal opposition to the composition proposed, objecting, amongst other things, to George Walshe being admitted as a creditor on the claims purchased by him, because (as they alleged) he purchased the same for the purpose of influencing

the proceedings, and because he had received $2,500 thereon, which was an unlawful preference. At the second meeting of creditors on the 14th of February, the register certified that two-thirds in number and a majority in value of all the creditors, and the bankrupt himself had affirmed the resolution for composition, by signing their names to a paper to that effect, which was appended to the report. The register in his report of the proceedings enters into a particular explanation of the various debts. He also bestows attention to the schedule of assets, and concludes by reporting that it was for the interest of all concerned that the composition should be approved and recorded. The paper of ratification annexed to the report shows that twenty-five parties (persons and firms) holding debts over $50 signed the ratification, including George Walshe as one (who had purchased debts to the amount of over $19,000 at 25 cents on the dollar, on which he had been paid $2,500); and that the amount of the debts was $23,780.88, including that of George Walshe, put down at $17,498.89. But leaving out him and his debt, the ratification would have in its favor twenty-four creditors in number, and $6,282 in amount.

In either case, therefore, whether George Walshe were included or not included, the composition received the ratification of much more than two-thirds in number, and one-half in value of all the bankrupt's creditors.

But the opponents allege that there was a fraudulent conspiracy between the bankrupt and his friends, particularly his brother, the said George Walshe, and his friend Frederick H. Smith, of New Jersey, to bring about this composition, and much evidence was taken to show that after laborious but unsuccessful efforts to get the opponents to acquiesce in the composition. Smith had advised the bankrupt to get some friend to buy up the other debts at twenty-five cents on the dollar, and to use them when thus bought up to coerce the opponents, and to bring about the desired composition; and that the bankrupt had taken this advice, and had induced his brother to advance $5,000 for this purpose, he himself raising $2,500 more, and with these means purchasing up a large part of his debts, retiring those which had been purchased with his own money, and procuring the others to be assigned to his brother. There was evidence, however, to show that George Walshe would not have the business transacted in any other way than by an assignment to him of his share of the purchased claims. Be this as it may, it seems that after throwing all these claims out, and not even allowing George Walshe to come in as a creditor at all, considerably more than the requisite majority of creditors in number and amount ratified the composition. And then, the evidence of all these transactions was open and accessible to the ratifying creditors, if they had chosen to examine it. If they were satisfied that the composition was for their interest, and for the interest of all concerned, there does not appear to be any very cogent reason why the purchase of the bankrupt's debts by his brother should interfere with it. No pains appears to have been taken by him to conceal what he was doing. On the contrary he was very frank in stating the whole of the transaction.

But to avoid every cavil, the court took the pains (and this is assigned for error) to refer it back to the register to ascertain and report all the facts of the case, and especially whether the creditors who had ratified the composition understood the matter of the purchase of the bankrupt's debts, and the part taken in it by him, his brother and Smith. A full and detailed report was made by the register, and the court made a final decree confirming the composition. [Case unreported.] This decree is brought here for review, and various errors are assigned.

It is objected that the court had no power to refer the matter back to the register, after the case had been brought on for final hearing. But this is clearly a mistake. The court of bankruptcy has all the powers of a court of equity, and proceeds summarily, untrammeled by the ordinary rules of procedure. And a court of chancery may refer a matter for inquiry as to the particular facts at any stage of the cause. It may even direct a feigned issue at the final hearing.

Again, it is objected that George Walshe was not a lawful creditor, and should not have been accounted as such in the vote of ratification. We have seen that his vote made no difference. The result would have been the same if he and his claim had been stricken out. I do not think that the presence and vote of a creditor, who is not lawfully to be accounted such, should nullify the proceedings, unless the absence of his vote would change the result. If a compromise could be nullified by the presence of an unlawful creditor, few compromises would be safe.

These views render it unnecessary to discuss some other questions which were mooted in the case. For example, it is contended that the deposit in bank, to the credit of the bankrupt, of the $5,000 received from his brother, made the money his own. In law, and as between him and the bank, this might have been so. But if he was really the agent or trustee of his brother, that relation would not be destroyed by depositing the money in his own name, or even by using it in the purchase of other property. This point, however, has become immaterial in the cause.

The decree of the district court is affirmed.